# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSEPH SEAN**                                       **CIVIL ACTION**
**CAMPBELL**

**VERSUS**                                             **NO. 15-417-JJB-RLB**

**CAROLYN COLVIN,**
**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 15, 2016.

 

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSEPH SEAN**                                                **CIVIL ACTION**
**CAMPBELL**


**VERSUS**                                                      **NO. 15-417-JJB-RLB**


**CAROLYN COLVIN,**
**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, Joseph Sean Campbell (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's applications for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 2-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

Plaintiff filed an applications for disability insurance benefits and supplemental security income alleging that he became disabled on September 7, 2012 because of cardiomyopathy, a back injury, Hereditary Spastic Paraplegia (HSP), Irritable Bowel Syndrome (IBS), an eye muscle condition – unidentified, high blood pressure and depression. (Tr. 67, 146-54). Plaintiff's application was denied by an Administrative Law Judge (ALJ), who first held an administrative hearing (Tr. 32-64) before issuing an unfavorable decision on October 25, 2013. (Tr. 19-28). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 23, 2015. (Tr. 2-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her

impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff met the insured status requirements through December 31, 2015.

2. Plaintiff did not engage in substantial gainful activity since September 7, 2012.

3. Plaintiff suffered from the following severe impairments: hereditary spastic paraplegia, lumbar spondylosis, exotropia and myopia.

4. Plaintiff did not meet or medically equal a listing.

5. Plaintiff retained the residual functional capacity (RFC) to perform sedentary work but he was precluded from climbing ladders, ropes and scaffolds, and is limited to occasional stooping, kneeling, crouching, and crawling. The claimant cannot work heights and must avoid workplace hazards, such as dangerous machinery, uneven or vibrating surfaces, and work requiring depth perception or continuous computer reading.

6. Plaintiff was unable to perform any past relevant work.

7.     Plaintiff was a younger individual.

8.     Plaintiff had a high school and was capable of communicating in
English.

9.     The transferability of job skills was not material to the ultimate determination of
disability.

10.    Considering Plaintiff's age, education, work experience and RFC, there were jobs
existing in significant numbers in the national economy that Plaintiff could
perform.

11.    Plaintiff had not been under a disability between September 7, 2012 and October
25, 2013.

(Tr. 21-27).

## IV.    DISCUSSION

### A.    Additional Evidence Submitted By Plaintiff

Plaintiff has attached about 126 pages of new medical records to his Memorandum in

Support of Appeal (R. Docs. 8-1, 8-2, 8-3).  Some of these records pre-date the ALJ's decision,

while the majority were not created until after the ALJ's decision denying Plaintiff's application.

Either way, none of the medical records were made part of the administrative transcript.  In other

words, none of the records were considered by the Commissioner in connection with Plaintiff's

application for disability.  Plaintiff argues that this evidence is both new and material, and

therefore, warrants remand under sentence six of 42 U.S.C. § 405(g).

"In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good

cause must be shown for the failure to incorporate the evidence into the record in a prior

proceeding." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).  The new evidence must also

pertain to the contested time period and not merely concern a subsequently acquired disability or

the deterioration of a condition that was not previously disabling. *Id.*

First, the majority of the records either post-date the ALJ's October 25, 2013 decision (R. Doc. 8-1 at 4-48, 50-75, 101) (aside from one instance of treatment in November of 2013, the remainder of these records were created in 2014 and 2015), or pre-date Plaintiff's September 7, 2012 alleged onset date (R. Doc. 8-1 at 116-18; R. Doc. 8-2) (records from 2008); (R. Doc. 8-3) (records from 2005). The records pre-dating the ALJ's alleged on-set date and post-dating the ALJ's decision do not refer to Plaintiff's condition during the relevant time period and Plaintiff does not otherwise argue that they shed light upon his condition during the relevant time period. These records are therefore not relevant to Plaintiff's current application and do not warrant remand under sentence six. *See Leggett*, 67 F.3d at 567; *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) ("The ALJ's decision in this case was rendered on March 28, 1995. While Dr. Felten's opinion one year later may be relevant to whether a deterioration in Anastasia's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case."); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) ("None of the proffered evidence speaks to Schmidt's condition as it existed at or prior to the time of the administrative hearing." Therefore, the records "do not meet the standard for new and material evidence."); *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989) (The evidence presented to the district court was not "new and material" as "the reports postdating the hearing speak only to Kapusta's current condition, not to his condition at the time his application was under consideration by the Social Security Administration.").

While the remaining records are dated between May 24, 2013 and September 24, 2013, and were created during the relevant time period, they likewise do not warrant remand as Plaintiff has not established good cause for his failure to provide them during the administrative process. (R. Doc. 8-1 at 39, 76-100, 102-115). Plaintiff's sole explanation is that he retained new

counsel who later "obtained" the "missing" evidence. (R. Doc. 8 at 17).  The Fifth Circuit has rejected this very explanation as insufficient to show good cause warranting remand. *Geyen v. Secretary of Health and Human Services*, 850 F.2d 263, 264 (5th Cir. 1988) (rejecting the "explanation offered by Geyen—that he obtained new counsel after the administrative process concluded"—as good cause for presenting medical evidence for the first time on judicial review; the fact that the claimant "acquire[d] a new lawyer with a new idea" was insufficient to warrant remand); *Watts v. Harris*, 614 F.2d 515, 516 (5th Cir. 1980) (good cause not shown where claimant "offered no explanation" as to why the psychiatric report was not obtained before the administrative hearing); *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993) (Claimant lacked good cause for failing to obtain medical report from treating physician prior to the ALJ's hearing and January 10, 1990 decision. "Dr. Mayorga has been Plaintiff's treating physician since 1988. Surely, Plaintiff . . . could have obtained [the] August 14, 1990 report prior to the initial hearing before the ALJ.").  As such, the evidence submitted by Plaintiff does not warrant remand under Sentence 6 and, because it is not part of the administrative transcript, will not be considered by the Court.

### B.    ALJ Properly Rejected the Opinions of Dr. Harry Kean Day

The record contains two medical source statements (MSS) from Dr. Harry Kean Day, written on July 15, 2013 (Tr. 308) and December 19, 2013[1] (Tr. 325-27).  On July 15, 2013, Dr. Day issued an MSS opining:

> [Plaintiff] has documented diagnosis of hereditary spastic paraplegia, primary cardiomyopathy, hypertension and hyperlipidemia. Because of [his hereditary spastic paraplegia (HSP)] he cannot stand or walk for periods over 20-30 minutes. He has frequent falls which make him at increased risk in the work place. He has eye muscle imbalance as well which makes reading a computer very difficult for more than 10 to 15 minutes.

---

[1] As discussed in the following section, Plaintiff places particular emphasis on Dr. Day's December 2013 MSS to attack the ALJ's finding at Step Three.

> All [of] this has led to moderate depression as well. Please consider Mr. Campbell for full disability. I do not see how he could fill most any job description.

(Tr. 308). On December 19, 2013—after the ALJ issued her decision denying benefits—Dr. Day submitted a second MSS indicating that Plaintiff's diagnosed hereditary spastic paraplegia results in significant and persistent disorganization of motor function in two extremities and is therefore medically equivalent in severity to Listing 11.14. (Tr. 325-27). Dr. Day additionally opined:

> The patient has significant symptoms in his lower extremities causing balance and mobility problems as well as frequent falls, pain, spasticity and loss of senses . . . . Patient is extremely limited in his ability to stand or walk and needs a prescribed cane for balance. Climbing stairs, walking a block at a normal pace, ambulating on uneven surfaces, etc. are not feasible.

(Tr. 326).

During her RFC analysis, the ALJ considered the entire record, including Dr. Day's July 2013 opinion, to which she accorded little weight. The ALJ did not discuss Dr. Day's December 2013 MSS, however, because it was not created until after the ALJ's decision. Plaintiff claims that the ALJ rejected the opinions of his "treating physician," Dr. Harry Kean Day, Jr., in error as both opinions are inconsistent with the RFC and Dr. Day's second opinion is inconsistent with the ALJ's adverse finding at Step Three. (R. Doc. 8 at 14-16).

While the Court considers both arguments in turn, it notes at the outset that Dr. Day's December 2013 opinion was not before the ALJ because it was rendered after the ALJ issued her decision in this case. As such, the ALJ did not err by ignoring evidence that she was not able to consider. Second, nothing in Dr. Day's medical source statement refers to the status of Plaintiff's impairments before December 19, 2013. In other words, Dr. Day's opinion does not relate to the relevant time period and therefore does not cast doubt on the existence of substantial evidence supporting the RFC or the decision at Step Three. Nonetheless, the Court explains

below that even if Dr. Day's December 2013 opinion were addressed to the relevant time period,
it would not cast doubt on the ALJ's RFC or Step 3 findings.

### i.  Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the
claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A
reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if
the court would reach a different conclusion based on the evidence in the record. *Johnson v.
Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).
The court "may only scrutinize the record" and take into account whatever fairly detracts from
the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564.
Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous
absence of credible evidentiary choices or no contrary medical findings to support the ALJ's
decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ considered the entire record before finding Plaintiff could perform a
limited range of sedentary work. (Tr. 23-26).  Specifically, the ALJ precluded Plaintiff from
climbing ladders, ropes, and scaffolds; and limited him to occasional stooping, kneeling,
crouching, and crawling.  Additionally, Plaintiff could not "work heights and must avoid
workplace hazards, such as dangerous machinery, uneven or vibrating surfaces, and work
requiring depth perception or continuous computer reading." (Tr. 23).

In making this finding, the ALJ "accord[ed] little weight" to Dr. Day's July 2013
"medical statement, as it [was] not addressed to any specific entity and merely reflects the
claimant's complaints and statement of abilities but is not based on objective evidence." (Tr. 26).
Again, Dr. Day's December 2013 opinion was not before the ALJ and, logically, was not

discussed.  Plaintiff claims that Dr. Day is a treating physician whose opinions should be adopted as they are soundly based on his own "medical observations" of Plaintiff.  The Court disagrees.

To begin, the portions of Dr. Day's opinions finding Plaintiff "full[y] disab[led]" (Tr. 308) and "not able to sustain any activity, even sedentary, on a full time basis," (Tr. 326) are not entitled to any weight.  Opinions on issues reserved to the Commissioner, like the ultimate issue of disability, are not medical opinions, as Plaintiff suggests. See 20 C.F.R. § 404.1527(d) (an opinion from a medical source that a claimant is disabled is "not [a] medical opinion[ ]"); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status.").  A statement by a medical source that a claimant is "disabled" or "unable to work" does not require the Commissioner to find that claimant disabled. *See Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) ("A statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act . . . ."). Therefore, the ALJ properly rejected Dr. Day's opinions as to the ultimate issue of disability — a decision reserved to the Commissioner.

Next, Dr. Day's medical source statements are not supported by any of his own treatment records.  In the absence of any objective medical findings to support the serious limitations opined by Dr. Day or even the existence of a treating relationship, Dr. Day's July 2013 and December 2013 opinions do not cast doubt upon the existence of substantial evidence supporting the RFC. *See Munson v. Commissioner of Social Security Administration*, 2014 WL 1165837, at *5-6 (M.D. La. March 21, 2014) (ALJ properly rejected treating physician's medical source

statement where none of the opined limitations were corroborated by observations and clinical findings made during examination).

Moreover, Dr. Day's opinions regarding Plaintiff's limitations are inconsistent with the remaining record evidence, all of which provides substantial evidence for the ALJ's RFC finding.

To begin, Dr. Day's findings that Plaintiff was "extremely limited in his ability to stand or walk," and required a prescribed cane for ambulation, are inconsistent with the remaining record. (Tr. 326). For example, in his Functional Report, Plaintiff claimed that he used a cane for ambulation, but that it was not prescribed by any physician. (Tr. 190). During his November 13, 2012 consultative examination with Dr. Adobaye Francis, Plaintiff did not use any assistive device for ambulation, including a cane. (Tr. 291-93). At the hearing, when asked whether any physician prescribed a cane for ambulation, Plaintiff responded: "Yes, ma'am. Well he highly suggested that I integrate it into my lifestyle." (Tr. 49). Plaintiff's treatment records, however, do not support this contention.

During the administrative process, Plaintiff reported being able to do household chores that are inconsistent with the "extreme limit[ations]" described by Dr. Day, including the ability to do 1 hour of vacuuming. (Tr. 191, 185-87). Plaintiff further claimed that he could walk for 1,000 feet before stopping and that his impairments did not affect his ability to sit. (Tr. 189). Plaintiff also told Dr. Francis that his HSP causes back pain which is aggravated by "strenuous activity," but relieved by Advil. (Tr. 291). Upon examination, Plaintiff exhibited full range of motion, and normal muscle tone and strength in all extremities. (Tr. 294, 296).

Consistent with Dr. Francis' findings, the record indicates that Plaintiff exhibited full strength (Tr. 312) and the ability to move all extremities well ("MAEW") (Tr. 263, 274, 277).

Although doctors observed unsteady or wobbly gait (Tr. 263, 277, 291, 298), spastic contractions (Tr. 277), and hyper reflexes (Tr. 294), doctors likewise did not consider Plaintiff to be a "fall risk" upon examination. (Tr. 271, 274, 277, 278, 281).  Moreover, the ALJ accounted for findings of unsteady gait and hyper reflexes in the RFC by instructing Plaintiff to avoid heights, dangerous machinery, and uneven or vibrating surfaces at work. (Tr. 23).

And even assuming the ALJ erred in rejecting Dr. Day's opinion that Plaintiff could only stand or walk for 20 to 30 minutes, substantial evidence would still support the RFC, as the ability to stand/walk for 20 to 30 minutes at a time is consistent with the performance of sedentary work. *See Adams v. Astrue*, 340 F. App'x 219, 221 (5th Cir. 2009) (substantial evidence supported RFC for sedentary work where claimant testified that "she could walk for 20-30 minutes before needing to stop to rest"); *Zonak v. Commissioner of Social Security*, 290 F. App'x 493, 497 (3d Cir. 2008) (claimant's testimony that "he could walk for approximately 20 minutes before he needed to stop and rest" was consistent with the performance of sedentary work).

Moreover, Plaintiff's own testimony that he was able to lift 15 to 20 pounds is inconsistent with Dr. Day's opinion that Plaintiff's impairments prevent even the performance of sedentary work. (Tr. 48, 325-27).  While the record demonstrates limitations caused by Plaintiff's impairments, those limitations are not as extreme as those opined by Dr. Day and are instead consistent with the RFC. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (A limitation to sedentary work is "in itself a significant limitation.").

Finally, Dr. Day's opinion that Plaintiff's visual impairments prevented him from reading or looking at a computer screen for more than 10 to 15 minutes is not corroborated by Plaintiff's ophthalmic treatment records. (Tr. 308).  The medical evidence indicates that Plaintiff has

suffered from convergence insufficiency since the age of 13 or 14. (Tr. 283).  Nonetheless, as the ALJ pointed out, Plaintiff has been able to maintain employment throughout his life, despite this impairment. (Tr. 26, 283).  Moreover, there is no evidence of deterioration in Plaintiff's condition. (Tr. 26); (Tr. 258-29) (Plaintiff's eyesight was 20/20 in both eyes with correction); (Tr. 329-30) (Plaintiff's vision was 20/20 in both eyes). *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Leboeuf v. Apfel*, 2000 WL 341028, at *4 (E.D. La. March 30, 2000) (ALJ properly took into account the fact that "Plaintiff worked for years despite his condition . . . ."); *Arensman v. Apfel*, 40 F. Supp. 2d 1249, 1255 (D. Kan. 1999) ("When a plaintiff has worked with an impairment over a period of years, the impairment cannot be considered presently disabling without showing there has been a significant deterioration of plaintiff's condition.").

Doctors likewise did not impose any "ophthalmic restrictions relative to driving" and placed no "limitations" on the types of "activities or working conditions" Plaintiff could participate in due to his visual impairments. (Tr. 259).  The record demonstrate a failure to seek regular care or follow prescribed treatments (Tr. 44, 259), despite notations indicating that his condition could be improved with treatment (Tr. 259).  And although Dr. Day found Plaintiff could not read or look at a computer screen for longer than 10 or 15 minutes, Plaintiff himself testified that he uses Facebook and reads for pleasure.  Likewise inconsistent with Dr. Day's opinion, Plaintiff's other doctors observed no diplopia (double vision) throughout the record. (Tr. 283, 286, 293).  While the record supports limitations resulting from Plaintiff's visual impairments, those limitations are inconsistent with those opined by Dr. Day and are otherwise sufficiently accounted for in the RFC, as the ALJ limited Plaintiff to work that did not require depth perception or continuous computer reading. (Tr. 23).

For the reasons given above, substantial evidence supports the ALJ's rejection of Dr. Day's opinions and the ALJ's RFC finding.

### ii.      Plaintiff Did Not Meet or Medically Equal Listing 11.14

Plaintiff additionally relies on Dr. Day's December 19, 2013 opinion as support for the argument that Plaintiff's diagnosed Hereditary Spastic Paraplegia (HSP) medically equals Listing 11.14 and that the ALJ committed reversible error by ignoring this evidence. (R. Doc. 8 at 14).  Plaintiff's further argues that the ALJ "did not identify the listed impairments for which the claimant's symptoms failed to qualify, nor did she provide any explanation of how she reached the conclusion that the claimant's symptoms were insufficiently severe to meet any listed impairment." (R. Doc. 8 at 12).  This lack of explanation, Plaintiff contends, also warrants remand.

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). The criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v.*

*Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). But, even if the ALJ fails to explain an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

Here, the ALJ summarily determined Plaintiff's impairments did not "singly or in combination meet or medically equal the required criteria for any of the impairments listed under" Listing 1.00 (Musculoskeletal Impairments), including Listing 1.04 (Disorders of the Spine); Listing 2.00 (Special Senses and Speech Impairments); and Listing 11.00 (Neurological Impairments). (Tr. 23). While Plaintiff is incorrect that the ALJ "did not identify the listed impairments for which the claimant's symptoms failed to qualify," the Court agrees with Plaintiff to the extent he argues that the ALJ's lack of explanation was inappropriate. The ALJ fails to point to any supporting medical evidence, or otherwise explain her finding at step 3; this conclusory determination was in error. See *Audler*, 501 F.3d at 448.

Even still, to be entitled to relief Plaintiff must not only establish that the ALJ erred, but that this error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In other words, the Court must still determine whether that error was harmless. *Morris*, 864 F.2d at 334. Procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, Plaintiff must establish that the ALJ's error at step 3 was not harmless because the record supports that he in fact meets or medically equals Listing 11.14. See *Morris*, 864 F.2d at 335.

Listing 11.14 requires a diagnosis of peripheral neuropathies "with disorganization of motor function . . . in spite of prescribed treatment." 20 C.F.R. pt. 404, subpt. P, app'x 1 § 11.14 (Peripheral Neuropathies). The "disorganization of motor function" must be "significant and

persistent . . . in two extremities, resulting in sustained disturbance of gross and dexterous movements (see 11.00C)." *Id.* at § 11.04B.  Listing 11.00C further clarifies that a claimant must show:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. pt. 404, subpt. P, app'x 1 § 11.00C.   Plaintiff insists that his diagnosed HSP medically equals the severity of Listing 11.14.  The Court disagrees.

To establish medical equivalence, Plaintiff relies on Dr. Day's 2013 medical opinion. According to Plaintiff, Dr. Day is a treating physician and the ALJ erred in ignoring this evidence which directly conflicts her finding at Step 3.  The Court disagrees.

Again, even if the Court found Dr. Day's opinion related back to the relevant period, the opinion would not establish medical equivalence warranting remand as it is not supported by any objective medical findings made by Dr. Day and is otherwise inconsistent with the evidence of record.

Beyond that, Dr. Day's December 2013 opinion (that Plaintiff's HSP causes significant and persistent disorganization of motor function as required by Listing 11.14) does not cast doubt upon the existence of substantial evidence supporting the ALJ's decision at Step 3 as it is inconsistent with the remaining medical evidence of record. *See Munson v. Commissioner of Social Security Administration*, 2014 WL 1165837, at *5-6 (M.D. La. March 21, 2014) (ALJ properly rejected treating physician's medical source statement where none of the opined limitations were corroborated by observations and clinical findings made during examination).

Although the record does demonstrate diminished mobility, the medical evidence does not establish "significant and persistent disorganization of motor function."   For example, at a December 6, 2011 examination, doctors reported unsteady gait and spastic contractions at rest, but Plaintiff was still able to move all extremities well ("MAEW"). (Tr. 263).  On May 10, 2012, doctors again noted Plaintiff's ability to move all of his extremities well. (Tr. 274).  The neurological portion of an exam on December 2, 2011 found that Plaintiff's nerves were grossly intact, his pulses were 2+, and there were no signs of swelling or edema. (Tr. 275).  On December 6, 2011, examination found spastic contractions at rest and unsteady gait, but Plaintiff was again able to move all of his extremities well. (Tr. 277).  At an appointment on June 15, 2011, Plaintiff reported "no current issues" and was instructed to continue his medications and exercise. (Tr. 281).  On November 20, 2011, Plaintiff complained of back pain after tripping over one of his pet cats. (Tr. 311-24).  On examination, doctors found that Plaintiff's patellar tendon was more reflexive than normal, but observed 5/5 strength in Plaintiff's extremities. (Tr. 311-24).

During his November 13, 2012 consultative exam with Dr. Adobaye Francis, Plaintiff reported that his HSP caused back pain that was aggravated by strenuous activity, but relieved by Advil. (Tr. 291).  Plaintiff likewise did not make use of an assistive device for ambulation and he was able to get on and off the exam table independently, but with some difficulty. (Tr. 291-93).  Dr. Francis observed full range of motion in Plaintiff's cervical and lumbar spine. (Tr. 293-94).  Examination of Plaintiff's lower extremities revealed wobbly gait, an inability to stand/walk on his heels and toes and hyper-reflexive deep tendon reflexes, but normal muscle tone, normal strength and normal range of motion. (Tr. 294, 296).

On January 21, 2013, Dr. Marc Zimmerman examined Plaintiff at the request of the Commissioner. (Tr. 298-301).  At the outset, Dr. Zimmerman noted that Plaintiff drove himself to the appointment, which took 25 minutes. (Tr. 298).  Dr. Zimmerman also observed, "His gait is awkward while his station is normal. Otherwise, he does not display any anomalies of gross or fine motor movement." (Tr. 298).  Concerning his medical history, Plaintiff reported the following: "He had a hernia repair in 1989. He is hypertensive. Otherwise, he denies any serious chronic or acute medical problems." (Tr. 298).  According to Dr. Zimmerman's exam notes, Plaintiff told Dr. Zimmerman that he was able to care for himself and drive. (Tr. 299).  For pleasure, Plaintiff reported gardening, taking care of his pets and spending time with his friends and family.

On January 15, 2013, Dr. Day himself opined that Plaintiff could stand and/or walk for 20 to 30 minutes at a time. (Tr. 308).  In his Functional Report, Plaintiff reported being able to perform household chores, including one hour of vacuuming; drive a car; go out alone; and cut grass using a riding lawn mower. (Tr. 186, 187, 191).  While Plaintiff's medical records support some limitations, they do not indicate "significant and persistent disorganization of motor function," as required by Listing 11.14. *Compare Garcia v. Colvin*, 2013 WL 3291415, at *6 (N.D. Tex. June 28, 2013) (while claimant experienced lower extremity pain, tingling, numbness and occasional limited motion in her left foot, she did not show significant and persistent disorganization of motor function as she was "ambulatory on crutches," often exhibited full ROM in her lower extremities and full strength), *and Irons v. Astrue*, 2009 WL 500627, at *9 (E.D. La. Feb. 23, 2009) (although claimant "had no functional use of her left arm," she could not show "significant and persistent disorganization of motor function *in two extremities*" where she only occasionally exhibited "decreased sensation, strength, and function in her right hand"),

with *Alvarex v. Commissioner of Soc. Sec.*, 2015 WL 3932543, at *8 (E.D. Mich. June 26, 2015) (objective findings of "left foot drop," "weakness of both legs," "wasting of the muscles in the lower extremities," "no mobility of [claimant's] toes" and that claimant's "right ankle was immobile" constituted evidence of significant and persistent disorganization of motor function).

As such, the evidence cited above substantially supports the ALJ's finding that Plaintiff did not meet or medically equal any of the Listings under section 11.00, including Listing 11.14, despite Dr. Day's December 2013 opinion.  Any failure to specifically set forth the basis for the ALJ's finding at Step Three is harmless.

### C.    Updated Medical Opinion

Plaintiff's final argument concerning Step Three is that the ALJ committed legal error by not complying with Social Security Ruling 96-6P, which required her to obtain an updated medical opinion on medical equivalence before issuing a decision. (R. Doc. 11 at 4).

Social Security Ruling 96-6P requires an ALJ and the Appeals Council to obtain an updated opinion regarding equivalence from a medical expert in only two circumstances, neither of which are present here.  First, an updated opinion must be obtained when no additional medical evidence is received, but the ALJ or Appeals Council believes the available medical evidence "suggests that a judgment of equivalence may be reasonable." SSR 96-6P, 1996 WL 374180, at *4.  Otherwise, an updated opinion must only be obtained where additional evidence is received that casts doubt on a previous finding that the claimant's impairments are not equivalent in severity to any listing. SSR 96-6P, 1996 WL 374180, at *4.  Neither situation is present here, as neither the ALJ nor the Appeals Council indicated that the evidence was insufficient to determine equivalency at Step 3, nor did they find any new evidence presented by Plaintiff, including Dr. Day's December 2013 opinion, cast doubt on the issue of equivalence.

*See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ did not err in failing to call medical expert to determine whether claimant's impairments medically equaled Listing 11.14 because "the ALJ did not indicate that he found the record insufficient to properly evaluate the evidence."); *Moxley v. Astrue*, 2010 WL 572102, at *7-8 (N.D. Tex. Feb. 10, 2010) (despite new evidence, ALJ not required to obtain updated opinion where record indicated ALJ felt claimant's impairments were not disabling and new evidence would not change the decision). As such, Plaintiff's assignments of error regarding Step 3 are without merit and substantial evidence supports the ALJ's decision that Plaintiff's impairments did not meet or medically equal a listing.

### D.     Medical Expert Testimony Was Unnecessary

Plaintiff further insists that the ALJ's failure to call a medical examiner to determine the nature and extent of the limitations imposed by his vision impairments warrants remand. (R. Doc. 8 at 17). According to Plaintiff, the ALJ "proceeded to posit vision-based hypotheticals to the vocational expert" at the hearing after "admitting that she could not fully evaluate his vision based on available evidence." (R. Doc. 8 at 17). Plaintiff, however, mischaracterizes the ALJ's statements about the record evidence relating to his vision.

At no time during the hearing did the ALJ suggest that the medical evidence was insufficient or too confusing to evaluate Plaintiff's vision impairments. In response to Plaintiff's testimony that, because of his impairments, his eyes "fatigue" and "just give up" after 10 to 15 minutes of reading (Tr. 43), the ALJ explained: "You know, I need an ophthalmologist to tell me that and I don't have one." (Tr. 43). The ALJ then continued by pointing out that the available medical evidence did not corroborate Plaintiff's subjective complaints as he had not regularly or even recently sought treatment by an ophthalmologist and had failed to follow previously

prescribed treatment. (Tr. 43-44).  Moreover, Plaintiff's doctors did not restrict his ability to drive or otherwise limit his activities based on his visual impairments. *See Konkol v. Barnhart*, 75 F. App'x 529, 533-34 (7th Cir. 2003) (claimant's visual impairment was not disabling, where claimant said he "still drives, hunts, shaves, and mows the lawn"); *Rehr v. Barnhart*, 431 F. Supp. 2d 312, 320 (E.D.N.Y. 2006) (substantial evidence supported denial of benefits based on visual impairment where plaintiff was still capable of driving).

Nonetheless, Plaintiff claims that the "uncertainties surrounding the extent" of his visual limitations "necessitate remand." (R. Doc. 8 at 18).  Any "uncertainty" in the record, however, is a direct result of Plaintiff's failure to seek regular treatment.  Therefore, the issue was not one of "uncertainty," but a lack of objective findings corroborating Plaintiff's alleged limitations. (R. Doc. 8 at 18). Given Plaintiff's failure to seek regular treatment and his failure to follow the treatment previously prescribed by his ophthalmologist, the ALJ appropriately discounted the alleged severity of Plaintiff's vision impairments. *Moore v. Soc. Sec. Admin.*, 153 F. App'x 945, 946-47 (5th Cir. 2004) (where medical records did not support the existence of a disability, ALJ had no duty to order additional testing of unsupported impairment alleged by plaintiff); *Gallardo v. Barnhart*, 32 F. App'x 131, at *2 (5th Cir. 2002) (rejecting argument that ALJ erred in not ordering additional consultative exam where multiple exams in the record do not support disability and plaintiff "has not cited or applied relevant legal standards to explain why the ALJ's refusal to authorize an additional consultative examination was an abuse of discretion."); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (rejecting plaintiff's argument "that the passage of time between the consultative examination on the record and the hearing demonstrates the need for another consultative examination" where the ALJ appropriately determined that the condition plaintiff claimed had worsened was not supported by the record);

*Poyck v. Astrue*, 414 F. App'x 859, 862 (7th Cir. 2011) (given the record did not support the degree of limitations alleged and "the lack of any evidence that Poyck's condition had deteriorated, the ALJ did not abuse his discretion in determining that an additional consultative examination was unnecessary."); *Carroll v. Barnhart*, 291 F. Supp. 2d 783, 795 (N.D. Ill. 2003) ("Because there was no medical evidence to support a swelling of her knees, this Court defers to the ALJ's conclusion that an  additional consultative examination was not necessary."); *Mynhler v. Colvin*, No. 13-45, 2014 WL 1331057, at *4 (E.D. Ky. March 31, 2014) (plaintiff "provided no basis for requiring that the ALJ order another consultative examination on top of the one performed" where the exam performed did not support the limitations alleged).

## V.    RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on June 15, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**